JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

WILMINGTON TRUST, N.A., solely in its
capacity as Trustee for the Benefit of the Registered
Holders of Wells Fargo Commercial Mortgage
Trust 2015-C28, Commercial Mortgage Pass-
Through Certificates, Series 2015-C28, by and
through its Special Servicer, Midland Loan
Services, a Division of PNC Bank, N.A.,

           Plaintiff,

v.

1141 REALTY OWNER LLC,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

**17 CV 7081**

**VERIFIED COMPLAINT**



Plaintiff Wilmington Trust, N.A., solely in its capacity as the Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28 (the "Trustee"), acting by and through Midland Loan Services, a Division of PNC Bank, N.A., solely in its capacity as Special Servicer pursuant to the Pooling and Servicing Agreement dated May 1, 2015 (the "PSA"), by its attorneys Sidley Austin LLP, for its Verified Complaint against Defendant, states as follows:

## NATURE OF THE ACTION

1.      This commercial foreclosure action arises out of Defendant 1141 Realty Owner LLC's (the "Borrower") service of alcoholic beverages at the Flatiron Hotel (the "Flatiron"), located at 9 West 26th Street (a/k/a 1141 Broadway), New York, New York 10010, without the requisite licenses from the New York State Liquor Authority, which constitutes an Event of Default under the Loan Documents (as defined below). Additionally, the Borrower

misappropriated funds generated by the Flatiron's food and beverage operations, failed to otherwise comply with the Loan Documents, and overall grossly mismanaged the Flatiron. The Borrower's conduct in this regard has greatly imperiled the value of the Flatiron, which, among other things, the Borrower pledged to secure a $25 million loan currently held by the Trustee, and must not be permitted to continue unabated. A receiver must be appointed to take control of the Flatiron to prevent any further impairment of the Trustee's collateral during the pendency of this action.

## THE PARTIES

2.      The Trustee is a national banking association with its main office in Wilmington, Delaware, and is therefore a citizen of State of Delaware.

3.      The Borrower is a Delaware limited liability company. Upon information and belief, Borrower's members are citizens of the State of New York and the British Virgin Islands and, therefore, Borrower is a citizen of the State of New York and the British Virgin Islands.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1)-(3) in that this is a dispute between citizens of different states and a citizen of a foreign state and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2), and because Borrower expressly agreed to venue in this Court.

**BACKGROUND**

**THE LOAN TRANSACTION**

6.       On or about April 16, 2015, Rialto Mortgage Finance, LLC, as lender (the "Original Lender"), and Borrower entered into a loan agreement (the "Loan Agreement"), pursuant to which Borrower obtained a loan from the Original Lender in the initial principal amount of $25,000,000 (the "Loan"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit A and incorporated herein by this reference.

7.       Simultaneous with the execution of the Loan Agreement, Borrower executed and delivered to Original Lender the Consolidated, Amended and Restated Promissory Note A in the amount of $22,500,000 ("Note A") and Promissory Note B in the amount of $2,500,000 ("Note B," and together with Note A, the "Notes"), evidencing the Loan. A true and correct copy of the Notes are attached hereto as Exhibits B and C, and are incorporated herein by this reference.

8.       In connection with the execution of the Loan Agreement and the Notes, and to secure payment of the Loan, Borrower executed and delivered to Original Lender the Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement dated as of April 16, 2015 (the "Mortgage"), which constitutes a first mortgage lien on that certain real property and improvements thereon in New York, New York, commonly known as the Flatiron Hotel, 9 West 26th Street (a/k/a 1141 Broadway), New York, New York and designated as Section 3, Block 828, Lot 25 in the Borough of Manhattan, City of New York, County of New York, State of New York and more fully described in the Mortgage (the "Premises") and, among other things, additional fixtures and personal property located on or at the Premises or used in connection therewith as more fully described in the Mortgage (together with the Premises, the "Property"). The Mortgage was submitted for recording in the

City Register of the City of New York in City Register File Number 2015000206911 on June 17, 2015. All appropriate mortgage recording taxes due in connection with the Mortgage and its recordation were paid in full. A true and correct copy of the Mortgage is attached hereto as Exhibit D and is incorporated herein by this reference.

9.      As further security for the payment of the Loan, Borrower executed and delivered to Original Lender the Assignment of Leases and Rents dated as of April 16, 2015 in favor of Original Lender. The Assignment of Leases and Rents was submitted for recording in the City Register of the City of New York in City Register File Number 2015000206912 on June 17, 2015. A true and correct copy of the Assignment of Leases and Rents is attached hereto as Exhibit E and is incorporated herein by this reference.

10.      In connection with the Note, Mortgage, and Assignment of Leases and Rents, and in order to further secure the amounts due under the Note, Borrower executed and delivered to Original Lender a UCC Financing Statement dated May 14, 2015 (the "UCC Statement"). The UCC Statement was submitted for recording in the City Register of the City of New York in City Register File Number 2015000206913 on June 17, 2015. A true and correct copy of the UCC Statement is attached hereto as Exhibit F and incorporated herein by this reference.

11.      The documents described in the preceding paragraphs and certain documents described in the succeeding paragraphs, including all such other agreements, documents and instruments executed and/or delivered in connection with the indebtedness evidenced by the Note, are sometimes hereinafter collectively referred to as the "Loan Documents." All capitalized terms not defined herein have the meanings ascribed to them in the Loan Documents.

**THE ASSIGNMENTS**

12.     On or about May 21, 2015, the Original Lender executed the Assignment of Mortgage in favor of Trustee, pursuant to which Original Lender assigned all of its right, title, and interest in the Mortgage to the Trustee.   The Assignment of Mortgage was submitted for recording in the City Register of the City of New York in City Register File Number 2015000241846 on July 14, 2015.  In accordance with the Assignment of Mortgage, the Trustee is the owner and holder of the Mortgage.   A true and correct copy of the Assignment of Mortgage is attached hereto as Exhibit G and incorporated herein by this reference.

13.     On or about May 21, 2015, the Original Lender executed the Assignment of Assignment of Leases and Rents in favor of the Trustee, pursuant to which the Original Lender assigned all of its rights, title, and interest in the Assignment of Leases and Rents to the Trustee. The Assignment of Assignment of Leases and Rents was submitted for recording in the City Register of the City of New York in City Register File Number 2015000241847 on July 14, 2015.  In accordance with the Assignment of Assignment of Leases and Rents, the Trustee is the owner and holder of the Assignment of Leases and Rents.   A true and correct copy of the Assignment of Assignment of Leases and Rents is attached hereto as Exhibit H and is incorporated herein by this reference.

14.     In May 2015, the Original Lender executed the Allonge to Note A (the "Note A Allonge") in favor of the Trustee.  In accordance with the Note A Allonge, the Original Lender transferred all of its right, title, and interest in Note A to the Trustee.  In accordance with the Note A Allonge, the Trustee is the owner and holder of Note A.   A true and correct copy of the Note A Allonge is attached hereto as Exhibit I and is incorporated herein by this reference.

15.     On or about April 16, 2015, Original Lender executed the Note Allonge for Note B (the "Note B Allonge") in favor of RMezz Flatiron LLC ("RMezz").  In accordance with the Note B Allonge, the Original Lender transferred all of its right, title, and interest in Note B to RMezz.  In accordance with the Note A Allonge, RMezz is the owner and holder of Note B.  A true and correct copy of the Note B Allonge is attached hereto as Exhibit J and is incorporated herein by this reference.

16.     On or about April 24, 2015, the Original Lender and RMezz entered into the Agreement Between Noteholders (the "Noteholder Agreement").  The Noteholder Agreement grants the Trustee, by virtue of assignment, the sole and exclusive authority with respect to the administration of, and exercise of rights and remedies with respect to, the Loan, the Notes, and the Mortgage.  A true and correct copy of the Noteholder Agreement is attached hereto as Exhibit K and is incorporated herein by this reference.

17.     On or about May 27, 2015, the Original Lender executed an assignment of the UCC Statement in favor of the Trustee, pursuant to which Original Lender transferred all of its right, title, and interest in the UCC Statement to the Trustee.  The assignment of the UCC Statement was submitted for recording in the City Register of the City of New York in City Register File Number 2015000241848 on July 14, 2015.  In accordance with the assignment of the UCC Statement, the Trustee is the owner and holder of the UCC Statement.  A true and correct copy of the assignment of the UCC Statement is attached hereto as Exhibit L and is incorporated herein by this reference.

18.     On or about May 21, 2015, the Original Lender executed the General Assignment in favor of the Trustee, pursuant to which the Original Lender assigned all of its right, title, and interest in the Loan and all other agreements, including but not limited to guaranty agreements,

and certificates and documents entered into or delivered in connection with the Loan.   In accordance with the General Assignment, the Trustee is the owner and holder of the Loan and all of the Loan Documents, with the exception of Note B.   A true and correct copy of the General Assignment is attached hereto as Exhibit M and is incorporated herein by this reference.

19.     As a result of the above-referenced assignments, Trustee holds all of Original Lender's right, title, and interest in the Loan, the Loan Agreement, Note A, the Mortgage, and all other Loan Documents, with the exception of Note B, which is held by RMezz.

20.     This action is authorized pursuant to the terms of the Noteholder Agreement as well as the Pooling and Servicing Agreement dated May 1, 2005.   Additionally, RMezz has expressly consented to the filing of this action.

## THE BORROWER'S MISMANAGEMENT OF THE PROPERTY

21.     Over the course of the past few weeks, the Trustee discovered that the Borrower has been mismanaging the Property, is in default under the Loan Documents, and operating the Property in violation of New York state law since shortly after the Loan closed in April 2015.  In particular, and as discussed more fully below, the Borrower improperly replaced the company responsible for managing the Property, failed to maintain an appropriate license permitting it to serve alcohol at the Property, misappropriated funds that should have been placed in an account controlled by the Trustee, failed to pay vendors and tax authorities, and allowed a mechanic's lien to be placed on the Property.  The Borrower's conduct in this regard has placed the Property in great peril.  A receiver must be immediately appointed to ensure that the value of the Trustee's collateral is not further impaired by the Borrower's gross mismanagement and illegal conduct.

**The Borrower's Termination and Replacement of the Original Manager**

22.     In 2015, the Borrower and You Gotta Have Faith Realty LLC (the "Original Manager") entered in the Management Agreement dated as of April 16, 2015, pursuant to which the Borrower appointed the Original Manager to supervise, direct, and control the management and operation of the Property.  The Management Agreement further provided that the Original Manager would "[p]rovide food and beverage services" and "[o]btain and keep in full force and effect in the name of [the Borrower], [the Original] Manager, or [the Original] Manager's affiliate . . . any and all operating licenses and permits."  (Ex. N).  The Original Manager is controlled exclusively by Robert "Toshi" K.Y. Chan.

23.     The Loan Agreement prohibits the Borrower from terminating the Management Agreement without the Trustee's consent, except upon the occurrence of a "bona fide, material event of default" by the Original Manager.  Upon the occurrence of such an event of default, however, the Borrower must replace the Original Manager with a Qualified Manager, defined under the Loan Documents as a manager who, "in the reasonable judgment of the [Trustee] possesses, experience in managing properties similar in location, size, class, use, operation and value as the Property."  Additionally, the Borrower must obtain "(a) a Rating Agency confirmation from the Rating Agencies and (b) if such Person is an Affiliate of Borrower, an Insolvency Opinion reasonably acceptable to Lender and acceptable to the Rating Agencies in their sole discretion."

24.     In or about August or September 2015, the Borrower terminated the Management Agreement by providing verbal notification, and then ceased making payments to the Original Manager.  The Borrower did not notify the Trustee of the termination of the Original Manager, let alone seek the Trustee's consent.  The Borrower also failed to replace the Original Manager

with a Qualified Manager, never obtained a Rating Agency confirmation from the Rating Agencies, and never obtained an Insolvency Opinion, each as required under the terms of the Loan Agreement. At present, the identity of the manager of the Property is not known to the Trustee. The Borrower recently disclosed, however, that the food and beverage operations at the Property are being managed by 1141 Broadway Restaurant and Penthouse Operations LLC ("R & P Operations"), an affiliate of Borrower also controlled by Mr. Vaswani. (Ex. O).

### The Borrower Has Failed to Maintain A Valid Liquor License at the Property

25.    At the time of the closing of the Loan, Toshi's Penthouse Inc. and 9 West 26th Street, both affiliates of the Original Manager and controlled by Mr. Chan, (collectively, the "Liquor Licensees") held the liquor licenses issued by the New York State Liquor Authority (the "SLA") permitting the sale of alcoholic beverages at the Property. (Ex. P; Ex. A). At present, the Liquor Licensees still hold the *only* liquor licenses issued by the SLA permitting the sale of alcoholic beverages at the Property. (Ex. Q). Upon information and belief, neither the Original Manager, the Liquor Licensees, nor Mr. Chan has had a role in the management or operation of the Flatiron since the Borrower terminated the Management Agreement in 2015. Instead, R & P Operations is managing the food and beverage operations at the Property, including the service of alcoholic beverages, and is doing so without a valid license from SLA. (Ex. O).

26.    Borrower's continued service of alcoholic beverages at the Property without a valid license issued constitutes an Event of Default under the Loan Documents, a clear violation of New York law, and could lead to a prohibition on the service of alcoholic beverages at the Property and the revocation of insurance coverage for the Property. Under either scenario, the viability of the Flatiron to continue operating as a boutique, luxury hotel would be in significant doubt and the value of the Trustee's collateral significantly impaired.

*The Borrower Has Misappropriated Funds Generated by the Property*

27.     The Borrower and the Trustee are also parties to the Cash Management Agreement dated April 16, 2015 (the "CMA").   Under the terms of the CMA, the Borrower agreed to deposit the Rents, as defined in the Mortgage, into the Clearing Account at Wells Fargo, N.A.   Rents includes, among other things, all of the revenue from the operation of the hotel on the Property, including revenue and credit card receipts from restaurants, bars, and mini-bars (hereinafter, "Food & Beverage Revenue").   The funds deposited into the Clearing Account are then transferred each business day to the Cash Management Account for distribution pursuant to the order of priority set forth in Section 6 of the CMA.

28.     Notwithstanding the terms of the CMA, the Borrower has admitted that it has been depositing the Food & Beverage Revenue in an account at Chase Bank rather than the Clearing Account at Wells Fargo, N.A.   Upon information and belief, the Borrower has been misappropriating the Food & Beverage Revenue for approximately 12 to 24 months. Notwithstanding the Trustee's request, the Borrower has not provided the Trustee with account statements that show the amount of Food & Beverage Revenue the Borrower has improperly diverted to the Chase Bank account.   As a consequence of the Borrower's conduct in this regard, the Trustee has no visibility into the actual revenue generated by the Property over the course of many months.

*The Borrower Has Failed to Pay Vendors and Taxes*

29.     Additionally, the Borrower has failed to pay amounts due to vendors that provided services at the Property as well as amounts due to state and local agencies for taxes. The total amount of accounts payable that has been outstanding for at least 60 days is $859,091.41, which includes $406,181.74 due to the New York State Department of Taxation

and Finance and $255,005.64 due to the New York City Department of Finance. (Ex. R). The accounts payable also includes $30,939 owed to Mr. Vaswani for unspecified services. There is also another $112,073.17 in accounts payable that has been outstanding for at least 30 days.

30.   The Borrower's failure to remit timely payment to its vendors resulted in the filing of a mechanic's lien against the Property by Maxons Restoration Inc. (Ex. S). The Loan Agreement prohibits Borrower from allowing the filing of such a lien against the Property and is a default thereunder.

### THE ACCELERATION NOTICE

31.   Borrower's failure to maintain valid and effective liquor licenses issued by the SLA permitting Borrower to serve alcoholic beverages at the Property constitutes an Event of Default under the Loan Documents. (Ex. A § 7.1(xii)). In particular, the Loan Agreement provides that it shall be an Event of Default, "if, without [the Trustee's] prior written consent, any required license, permit, including, without limitation, the Liquor License, relating to the Property cease to be in full force and effect." (*Id.*) The Trustee never consented to the Borrower's service of alcoholic beverages at the Property without an appropriate liquor license issued by the SLA.

32.   On September 15, 2017, the Trustee sent Borrower a Notice of Default and Acceleration (the "Acceleration Notice") advising Borrower that it was in default under the Loan Documents, accelerating the Maturity Date of the Loan, and demanding immediate payment of the current balance of the Loan, which as of the date of the Acceleration Notice totaled $24,209,357.00 plus all accrued interest thereon (which interest continues to accrue at the default rate as set forth in the Loan Documents), and all other sums due under the Loan Documents. A

true and correct copy of the Acceleration Notice is attached hereto as Exhibit T and is incorporated herein by this reference.

## A RECEIVER IS NECESSARY TO PROTECT THE VALUE OF PROPERTY

33.     As evidenced by the clear language of the Loan Documents, since an Event of Default has occurred and is continuing, the Trustee has a wide range of remedies, including, without limitation, the immediate acceleration of the entire Debt, the commencement of foreclosure proceedings, and the application for the appointment of a receiver for the Property. (*See* Mortgage, § 8.1(g)).

34.     The Borrower further agreed that an application for the appointment of a receiver shall be without notice and without regard to the adequacy of the security for the Debt and without regard for the solvency of the Borrower, or any person, firm or other entity liable for the payment of the Debt.  (*See* Ex. D § 10(vii)).

35.     As described above, the Borrower's mismanagement of the Property, improper replacement of the Original Manager, failure to maintain proper liquor licenses, failure to deposit the F & B Revenue into the Clearing Account, and failure to pay its vendors and taxing authorities demonstrate that there is an imminent and substantial risk that the value of the Trustee's collateral will be significantly impaired without immediate judicial intervention.  The appointment of a receiver will ensure that the Trustee's collateral is protected from any further damage caused by Borrower's obvious mismanagement of the Property.  The Borrower cannot be permitted to continue to operate the Property in violation of the parties' agreements and New York law.

## CAUSE OF ACTION
### (Foreclosure of Mortgage)

36.     The Trustee repeats and realleges the allegations set forth in paragraphs 1 through 35 above as if fully set forth herein.

37.     To date, the Borrower has not paid the amounts currently due on the Loan, or any portion thereof, and continues to be, and is, in default under the Mortgage, the Loan Agreement, the Note, and the other Loan Documents.  There is now justly due and owing to the Trustee upon the Mortgage the principal sum of $24,209,357.00 together with accrued interest thereon, late charges, costs of collection, and all other sums provided for in the Loan Documents.

38.     In order to protect its security, the Trustee may be compelled during the pendency of this action to pay charges affecting the Property, and the Trustee requests that any sums paid by it for said purposes, together with interest thereon, be added to the sums otherwise due under the Mortgage.

39.     Upon information and belief, the Defendant has, or may claim to have, some claim to, interest in or lien upon the Property or some part thereof, which claim, interest or lien, if any, has accrued subsequent to and/or is otherwise subordinate to the lien of the Mortgage.

40.     No other action or proceeding in New York State has been brought to recover the sums secured by the Mortgage being foreclosed herein or any part thereof.

41.     All conditions precedent necessary to bring forth the claim herein have been satisfied.

42.     Plaintiff has no adequate remedy at law.

43.     Plaintiff expressly reserves its rights to enter a deficiency judgment against the Borrower, after the sale of the Property.

44.    The Property, including the collateral described in the Mortgage and in this

Complaint, should be sold "AS IS" subject to:

     (a)    Any open and due taxes, and any interest and penalties due thereon, and any other tax liens, tax sales, assessments, water rates and sewer usage charges and elevator charges which have priority over the Mortgage being foreclosed herein;

     (b)    Any state of facts or any person or entity whose interest may be disclosed by an inspection of the Property or that a guaranteed survey of current date survey would show;

     (c)    Possible unpaid vault tax, if any;

     (d)    Building and zoning ordinances of each municipality in which the Property is located and possible violations of same;

     (e)    Any violations, orders, fees, charges or notices, if any, now or hereafter found on the Property, or filed in or issued by any governmental authority having jurisdiction over the Property, which have priority over the Mortgage being foreclosed herein;

     (f)    Covenants, conditions, restrictions, reservations, easements, public utility agreements and other agreements of record affecting the Property and not affected by this foreclosure action, if any;

     (g)    Prior judgments or liens of record, if any.

WHEREFORE, plaintiff demands judgment that:

A.    Trustee have its costs and allowances according to law and the Mortgage; that the Mortgage be foreclosed; that defendants and all persons claiming by, through, from or under any of them subsequent to the filing of the notices of pendency of this action, and every person or entity whose right, title, interest, conveyance or encumbrance is recorded subsequent to the filing of the notice of pendency of this action, be forever barred and foreclosed of all right, title, interest, claim, lien and equity of redemption in and to the Property and each and every part thereof, including the collateral described in the Mortgage and herein; that the Property,

- 14 -

including the Collateral described in the Mortgage and in this Complaint be sold in one or more

parcel(s) subject to the matters mentioned in paragraph 44 of this Complaint, and that the net

proceeds of sale, after payment of (i) the expenses of said sale (including those prescribed by

Section 1354(2) of the Real Property Actions and Proceedings Law) and of this action and (ii)

any other sums that may be required by law to be first paid therefrom, be applied in the

following manner: first, to the repayment to plaintiff of any amounts which during the pendency

of this action may be paid by or on behalf of plaintiff for taxes, assessments, and water and sewer

charges against the Property; second, to the repayment to plaintiff of any amounts which during

the pendency of this action may be paid by or on behalf of plaintiff for premiums of fire and

other insurance on the Property; third, to the repayment to plaintiff of all other charges which

during the pendency of this action have been paid or may be required to be paid by or on behalf

of plaintiff in order to preserve the security of the lien of the Mortgage, all with interest thereon

at the Default Rate as provided in the Loan Agreement and the Note; and fourth, to the payment

of the amounts due to plaintiff pursuant to the Mortgage for principal, interest and late charges,

together with interest thereon at the Default Rate and reasonable attorneys' fees and other

expenses and expenditures;

        B.     A receiver be appointed pursuant to Section 254(10) of the New York

Real Property Law, Section 1325 of the New York Real Property Actions and Proceedings Law,

and Rule 66 of the Federal Rules of Civil Procedure for the purposes of preserving and

protecting the value of the Property and to take immediate possession of the Property and

collateral described in the Mortgage and herein, and exercise all powers with respect to the

Property and collateral, including the collection of rents, revenues, profits, and income

therefrom, during the pendency of this action or to perform such other acts the Court orders and

deems appropriate, including the marketing and sale of the Property; and

         C.      The referee (or other officer) conducting such sale or sales be directed to

pay from the proceeds thereof all charges which are liens on the Property sold;

         D.      Plaintiff be awarded its costs and disbursements of this action; and

         E.      Plaintiff have such other and further relief as may be just and equitable.


Dated:  New York, New York               SIDLEY AUSTIN LLP
        September 18, 2017

                             By:  _____

                                   Richard S. Fries
                                   Andrew D. Hart
                                   Sidley Austin LLP
                                   787 Seventh Avenue
                                   New York, New York 10019
                                   Tel.  (212) 839-5300
                                   Fax.  (212) 839-5599

                                   Peter Benudiz*
                                   Elizabeth W. Walker*
                                   Sidley Austin LLP
                                   555 West Fifth Street
                                   Los Angeles, California 90013
                                   Tel.  (213) 896-6123
                                   Fax.  (213) 896-6600
                                   (*pro hac* application forthcoming)

                                   *Attorneys for Wilmington Trust, N.A.,*
                                   *solely in its capacity as Trustee for the*
                                   *Benefit of the Registered Holders of*
                                   *Wells Fargo Commercial Mortgage*
                                   *Trust 2015-C28, Commercial Mortgage*
                                   *Pass-Through Certificates, Series*
                                   *2015-C28, by and through its Special*
                                   *Servicer, Midland Loan Services, a*
                                   *Division of PNC Bank, N.A.*

## VERIFICATION

STATE OF KANSAS      )
                            ) ss.:
COUNTY OF JOHNSON    )

KEVIN SEMON being duly sworn, deposes and says:

I am a Special Servicing Manager at Midland Loan Services, a Division of PNC Bank, N.A., the Special Servicer for Wilmington Trust, N.A., solely in its capacity as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28. I have been expressly authorized to verify this Complaint on Plaintiff's behalf. I have read the Complaint and know its contents. The Complaint is true to the best of my knowledge, except as to the matters therein stated to be alleged on information and belief, and, as to those matters, I believe them to be true. The grounds of my knowledge, information and belief are the documents annexed to the Complaint, and other documents from the files of, and information in the possession of, Midland Loan Services, a Division of PNC Bank, N.A.

_____
Kevin Semon

Sworn to before me this
_14_th day of September 2017.

_____
Notary Public

NOTARY PUBLIC - State of Kansas
NANCY C. HILTON
My Appt. Expires 12-4-17

ACTIVE 224919686