UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, N.A., solely in its capacity as Trustee for the benefit of the registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28, by and through its Special Servicer, Midland Loan Services, A Division of PNC Bank, N.A., <br><br> Plaintiff, <br><br> - against - <br><br> 1141 REALTY OWNER LLC, <br><br> Defendant. | Docket No.: <br> 17 Civ. 7081(LGS) <br><br> **ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

Defendant 1141 Realty Owner LLC, by its attorneys, Robinson Brog Leinwand Greene Genovese & Gluck P.C., alleges as and for its Answer With Affirmative Defenses and Counterclaims, for the Complaint of Plaintiff WILMINGTON TRUST, N.A., solely in its capacity as Trustee for the benefit of the registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28, by and through its Special Servicer, Midland Loan Services, A Division of PNC Bank, N.A., as follows:

1.    Denies the allegations of paragraph 1 of the Complaint.

2.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 2 of the Complaint.

3.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint, except admits that Jay Vaswani who is a member of the Defendant through entities he controls is a citizen of California.

4. Denies the allegations of paragraph 1 of the Complaint to the extent it is determined that RMEZ Flatiron LLC, the owner and holder of Note B, is the real party in interest and should have been made a party plaintiff in this action and the citizenship of any of its members is New York.

5. Admits the allegations of paragraph 5 of the Complaint.

6. Admits the allegations of paragraph 6 of the Complaint.

7. Admits the allegations of paragraph 7 of the Complaint.

8. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint, except admits that the Defendant executed a "Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement, dated as of April 16, 2015 in the amount of $25,000,000 encompassing the obligations of Note A and Note B.

9. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint, except admits that the Defendant executed and delivered to the original lender an Assignment of Leases and Rents dated as of April 16, 2015.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint, except admits that the Defendant executed and delivered to the Original Lender a UCC Financing Statement dated May 14, 2015.

11. Neither admits nor denies the allegations of paragraph 11 of the Complaint as no factual averments are made and to the extent any factual allegations are made in paragraph 11 the Defendant denies them.

12. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Complaint.

13. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint.

14. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint.

15. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint.

16. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 16 of the Complaint.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the Complaint.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the Complaint.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the Complaint.

20. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the Complaint.

21. Denies the allegations of paragraph 21 of the Complaint.

22. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the Complaint, except admits that the defendant entered into a Management Agreement dates as of April 16, 2015 that pursuant to its terms expired on December 31, 2015.

23. Denies the allegations of paragraph 23 of the Complaint and respectfully refers the Court to the Loan Agreement for a full and complete rendition of its terms.

24. Denies the allegations of paragraph 24 of the Complaint.

25. Denies the allegations of paragraph 25 of the Complaint.

26. Denies the allegations of paragraph 26 of the Complaint.

27. Denies the allegations of paragraph 27 of the Complaint.

28. Denies the allegations of paragraph 28 of the Complaint.

29. Denies the allegations of paragraph 29 of the Complaint, except admits that certain vendors have not been paid because the Plaintiff improperly failed to return funds to the Defendant to pay operating expenses.

30. Denies the allegations of paragraph 30 of the Complaint.

31. Denies the allegations of paragraph 31 of the Complaint and respectfully the Court to the Loan Agreement for a full and complete rendition of its terms.

32. Denies the allegations of paragraph 32 of the Complaint, except admits that the Plaintiff sent Defendant a Notice of Default and Acceleration and respectfully the Court to the notice for a full and complete rendition of its content.

33. Denies the allegations of paragraph 33 of the Complaint.

34. Denies the allegations of paragraph 34 of the Complaint.

35. Denies the allegations of paragraph 35 of the Complaint.

36. With respect to paragraph 36 of the Complaint, the Defendant repeats and realleges each of its answers to paragraphs 1 through 35 of its answer as if fully set forth herein.

37. Denies the allegations of paragraph 37 of the Complaint.

38. Denies the allegations of paragraph 38 of the Complaint.

39. Denies the allegations of paragraph 39 of the Complaint, except admits that the Defendant retains substantial equity in the Property above the amount of any loan obligation to the Plaintiff.

40. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint.

41. Denies the allegations of paragraph 41 of the Complaint.

42. Denies the allegations of paragraph 42 of the Complaint.

43. Denies the allegations of paragraph 43 of the Complaint.

44. Denies the allegations of paragraph 44 of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

45. The Complaint fails to state a claim against the Defendant.

## SECOND AFFIRMATIVE DEFENSE

46. The Plaintiff lacks standing to bring a foreclosure action on behalf of Note B since the owner and holder of Note B is not the a mortgagee under the Mortgage and has never received an assignment of the mortgage.

## THIRD AFFIRMATIVE DEFENSE

47. The Plaintiff has knowingly waived any alleged rights under the Loan Agreement because, among other reasons, it knew Jagdish Vaswani was involved in the management of the Premises including the hotel and F&B operations and never objected to his management role.

## FOURTH AFFIRMATIVE DEFENSE

48. Jagdish Vaswani is A "Qualified Manager" under the Loan Agreement for, among other reasons, the Plaintiff's consent to the Liquor Licenses being transferred to him or an entity he controlled.

5

## FIFTH AFFIRMATIVE DEFENSE

49.     The Plaintiff has knowingly waived any alleged rights under the Loan Agreement because, among other reasons, it knew that F&B revenues were not being deposited in the Cash management Account and never objected.

## SIXTH AFFIRMATIVE DEFENSE

50.     The claims in the Complaint are barred under the doctrine of equitable estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

51.     The claims in the Complaint are barred under the doctrine of laches.

## EIGHT AFFIRMATIVE DEFENSE

52.     The claims in the Complaint are barred because the Plaintiff materially breached the Loan Agreement, by among other things, serving an improper notice of default and accelerating the loan without any conduct or event constituting an Event of Default, and commencing this foreclosure action without any basis, thereby relieving the Defendant of its obligations under the Loan Agreement.

## NINTH AFFIRMATIVE DEFENSE

53.     The claims in the complaint are barred because the Plaintiff's own improper conduct is responsible for any alleged default occurring under the loan Agreement.

## TENTH AFFIRMATIVE DEFENSE

54.     RMEZ Flatiron LLC is an indispensible party that should have been made as a party plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

55.     The Plaintiff has violated the election of remedies principle in foreclosure actions permitting a party to sue for foreclosure or to sue on the note obligation, but not both. Since

RMEZ Flatiron LLC is not a mortgagee and its Note B is an unsecured obligation the Plaintiff has violated the election of remedies principle by foreclosing on the mortgage governing Note A (and not Note B) and suing on behalf of RMEZ Flatiron LLC for the unsecured obligations under Note B.

## FIRST COUNTERCLAIM
(Declaratory Judgment)

56. The foreclosure action, together with its application for the appointment of a receiver, is predicated upon a Notice of Default/Notice of Acceleration which it served on September 15, 2017 and is designed to deprive the Defendant 1141 Realty Owner LLC (the "Borrower-Owner") of the benefit of its bargain and charge it a defeasance fee of approximately $4 million based upon the alleged early termination of the Loan.

57. On September 15, 2017, the Plaintiff served a Notice of Default and Acceleration Notice stating "Borrower has failed to maintain valid and effective liquor licenses issued by the New York Liquor Authority permitting Borrower to serve alcoholic beverages at the property."

58. At the time that the Plaintiff served its Notice of Default and Acceleration Notice, the Liquor Licenses were listed as active with the New York State liquor Authority, which has taken no action to revoke the Liquor Licenses.

59. The Liquor Licenses are, therefore, in full force and effect within the meaning of the Loan Agreement including Section 7.1 (xii) and the Notice of Default and Acceleration Notice was improperly sent to the Defendant and is a nullity.

60. A justiciable controversy exists between the Plaintiff and Defendant concerning the propriety of the Notice of Default and Acceleration Notice.

61. The Defendant has no adequate remedy of law.

62. By reason of the foregoing, the Defendant requests a declaratory judgment declaring that the Notice of Default and Acceleration Notice was improperly sent to the Defendant and a material breach of the Loan Agreement by the Plaintiff and is a nullity and all appropriate incidental remedies including deceleration of the Loan, compensatory damages and attorney's fees.

## SECOND COUNTERCLAIM
(Declaratory Judgment)

63. The Defendant repeats and realleges paragraphs 54 through 62 of its Answer as if fully set forth herein.

64. On October 11, 2017, the Plaintiff sent a Notice of Additional Defaults to the Defendant.

65. The additional alleged defaults include: "Failing to Deposit Rents and Income"; "Failing to Enter Into A Replacement Management Agreement With A Qualified Manager"; Failing To Operate The Hotel As Required By The Express language Of The Loan Documents"; "Failing To Pay Taxes"; "Failing To Submit Annual Operating Budget"; and "Liens Recorded Against The Hotel."

66. The Notice of Additional Defaults was served after the Plaintiff was in breach of its Loan Agreement with Defendant by improperly noticing a default and accelerating the loan and, therefore, any subsequent notice of default by the Plaintiff is a nullity.

67. Moreover, the first alleged additional default, "Failing to Deposit Rents and Income," is not a default because the definition of "Leases and Rents" in the UCC 1 Financing Statement (Exhibit F to the Complaint) does not define income or revenue as gross income or gross revenue and there was never any net income or net revenue from the F&B operations at the Hotel. In addition, the Plaintiff was fully aware from the inception of the loan that F&B revenues

8

were not being deposited into the Cash Management Account and has waived any right it might have had to notice a default on this basis. Finally, there are no current F&B revenues that are being generated by the Hotel.

68. The second alleged additional default, "Failing to Enter Into A Replacement Management Agreement With A Qualified Manager", is not a default because the Plaintiff consented to the Liquor Licenses being transferred to Mr. Vaswani and necessarily his management of the Hotel and F&B operations. In addition, the Plaintiff was fully aware that Mr. Vaswani was managing the Hotel and F&B operations and has waived any right it might have had to notice a default on this basis.

69. The third alleged additional default, "Failing To Submit Annual Operating Budget," is not a default since the Defendant did, in fact, submit an annual operating budget for 2017 to the Plaintiff and financial statements showing the actual revenues and expenses generated in 2016.

70. The fourth alleged additional default, "Failing To Operate The Hotel As Required By The Express language Of The Loan Documents, is not a default since the Defendant is not serving liquor at the Hotel and is in the process of having the Liquor Licenses transferred to it. In addition, there is no requirement under the Loan Documents that the Defendant must serve liquor at the Hotel.

71. The fifth alleged additional default, "Failing To Pay Taxes," is not a default because the Defendant has entered into an installment agreement with the respective governmental authorities and is fully current in its payment obligations under that agreement. In addition, the Plaintiff has improperly refused to return funds to the Defendant and is itself the cause of any alleged default for the failure to pay taxes.

{00890723.DOC;1 }

72. The sixth alleged additional default, Liens Recorded Against The Hotel", is not a default since the Defendant has obtained a release of the lien and provided it to the Plaintiff's counsel on October 12, 2017.

73. A justiciable dispute exists between the Plaintiff and the Defendant concerning the validity of each of the alleged defaults contained in paragraph 63 herein and set forth in the Plaintiff's Notice of Additional Defaults.

74. The Defendant has no adequate remedy of law.

75. By reason of the foregoing, the Defendant requests a declaratory judgment declaring that the Notice of Additional Defaults was improperly sent to the Defendant and a material breach of the Loan Agreement by the Plaintiff and is a nullity and all appropriate incidental remedies including deceleration of the Loan, compensatory damages and attorney's fees.

## THIRD COUNTERCLAIM
(Declaratory Judgment)

76. The Defendant repeats and realleges paragraphs 54 through 75 of its Answer as if fully set forth herein.

77. The Plaintiff has been improperly accruing and/or charging default interest and a financial reporting penalty under the Loan for approximately one year based upon an alleged default that either was wrongly noticed and or that was promptly cured.

78. In an email March 3, 2017 from Tim Teague, a representative of the Plaintiff, he states: "In order to incentivize the Borrower to get us the required reports, Wells is taking the following actions: We have are assessing default interest to the loan back to 5/1/2016, which is just after we issued the first default letter. As of today there is $1,003,125 in DI related to the A Note and $91,183.79 in Default Interest related to the B Note. . . .Our measures above are not

intended to collect additional money from the Borrower, but rather to bring the loan into compliance with the financial reporting covenants in the Loan Agreement."

79. The requested financial reports were promptly provided to the Plaintiff.

80. A justiciable controversy exists between the Plaintiff and Defendant concerning the propriety of the Plaintiff's charging or accrual of default interest and a financial reporting penalty.

81. The Defendant has no adequate remedy of law.

82. By reason of the foregoing, the Defendant requests a declaratory judgment declaring that the Plaintiff is improperly accruing and/or charging default interest on the Loan and a financial reporting penalty and all appropriate incidental remedies including compensatory damages and attorney's fees.

## FOURTH COUNTERCLAIM
(Breach of Contract)

83. The Defendant repeats and realleges paragraphs 54 through 80 of its Answer as if fully set forth herein.

84. The Defendant has performed all of it obligations under the Loan Agreement.

85. By, among other things, the sending the Notice of Default and Acceleration, the sending of the Notice of Additional Defaults and the improper accruing and/or charging of default interest, the Plaintiff has breached the Loan Agreement.

86. By reason of the foregoing, the Defendant has suffered monetary damages in an amount to be determined at trial.

{00890723.DOC;1 }

## FIFTH COUNTERCLAIM
(Breach of Fiduciary Duty)

87. The Defendant repeats and realleges paragraphs 54 through 84 of its Answer as if fully set forth herein.

88. A fiduciary duty exists between the Plaintiff and Defendant by, among other things, the Plaintiff's exercise of control over the Defendant's business by intentionally withholding funds which it was obligated to return to the Defendant to pay operating expenses as a means of forcing the Defendant to stipulate to a receiver even before the Plaintiff sent its Notice of Default and Acceleration which the Plaintiff seeks to declare as a nullity.

89. In an e-mail, dated September 7, 2017 (attached), Plaintiff's representative, Kevin Semon states as follows:

> I have too many questions unanswered at this time together with the liquor license issues. Therefore, I will not recommend a funding for the OPEX at this time. If the Borrower stipulates to the appointment of a receiver acceptable to lender, I would release funds as warranted to the receiver to assure an efficient operation of the hotel.

90. On September 28, 2017, Mr. Vaswani on behalf of the Defendant wrote to Mr. Semon attaching a list of critical lenders and payroll that needed to be paid. Mr. Semon wrote back in an e-mail of the same date (attached) as follows:

> Due to the identified events of default under the note, the Lender will not fund operating expenses until there is either a mutually acceptable third party or the appointment of a receiver to operate the F&B business.

91. In another e-mail of the same date (attached), Mr. Semon wrote to Mr. Vaswani as follows:

> The F&B concerns could be timely resolved via the receiver. I understand from our prior communications that you have supported the operating deficits at this hotel in the past noting advances totaling in excess of

12

$200,000. I recommend that you continue to fund the operating deficits to assure the timely payment of vendors and staff.

92. The Plaintiff falsely noticed a default and accelerated the Loan in an attempt to improperly terminate a low interest loan of 4.9% and collect a defeasance fee of approximately $4m for the early termination of the Loan to which it was not entitled.

93. The Plaintiff has acted in bad faith and has breached its fiduciary duty to the Defendant.

94. By reason of the foregoing, the Defendant has suffered monetary damages in an amount to be determined at trial.

## SIXTH COUNTERCLAIM
(Breach of Obligation of Goof Faith)

95. The Defendant repeats and realleges paragraphs 54 through 92 of its Answer as if fully set forth herein.

96. The Uniform Commercial Code ("UCC") expressly imposes an obligation of good faith in the performance or enforcement of lending transactions including the Loan Agreements.

97. Under the UCC, good faith is defined as "honesty in fact in the conduct or transaction concerned."

98. The Plaintiff has breached its obligation of good faith by, among other things, falsely noticed a default and accelerated the Loan in an attempt to improperly terminate a low interest loan of 4.9% and collect a defeasance fee of approximately $4m for the early termination of the Loan to which it was not entitled and by intentionally withholding funds which it was obligated to return to the Defendant to pay operating expenses as a means of forcing the Defendant to stipulate to a receiver.

99. By reason of the foregoing, the Defendant has suffered monetary damages in an amount to be determined at trial.

### SEVENTH COUNTERCLAIM
(Breach of Obligation of Goof Faith And fair Dealing)

100. The Defendant repeats and realleges paragraphs 54 through 97 of its Answer as if fully set forth herein.

101. In every contract there is an implied covenant that neither party shall do anything, which will have the effect of destroying or injuring the right of the other party, to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.

102. The good faith performance of a contract "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."

103. Bad faith "may be overt or may consist of inaction … the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."

104. The Plaintiff has breached its obligation of good faith by, among other things, falsely noticed a default and accelerated the Loan in an attempt to improperly terminate a low interest loan of 4.9% and collect a defeasance fee of approximately $4m for the early termination of the Loan to which it was not entitled and by intentionally withholding funds which it was obligated to return to the Defendant to pay operating expenses as a means of forcing the Defendant to stipulate to a receiver.

{00890723.DOC;1 }

105. By reason of the foregoing, the Defendant has suffered monetary damages in an amount to be determined at trial.

**WHEREFORE**, the Defendant 1141 Realty Owner LLC demands judgment against Plaintiff WILMINGTON TRUST, N.A., solely in its capacity as Trustee for the benefit of the registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28, by and through its Special Servicer, Midland Loan Services, A Division of PNC Bank, N.A., as follows:

(a) Dismissing the Complaint,

(b) On its First Counterclaim, a declaratory judgment declaring that the Notice of Default and Acceleration Notice was improperly sent to the Defendant and a material breach of the Loan Agreement by the Plaintiff and is a nullity and all appropriate incidental remedies including deceleration of the Loan, compensatory damages and attorney's fees;

(c) On its Second Counterclaim, a declaratory judgment declaring that the Notice of Additional Defaults was improperly sent to the Defendant and a material breach of the Loan Agreement by the Plaintiff and is a nullity and all appropriate incidental remedies including deceleration of the Loan, compensatory damages and attorney's fees;

(d) On its Third Counterclaim, a declaratory judgment declaring that the Plaintiff is improperly accruing and/or charging default interest and a financial reporting penalty on the Loan and all appropriate incidental remedies including compensatory damages and attorney's fees;

(e) On its Fourth Counterclaim for breach of contract, monetary damages in an amount to be determined at trial;

(f) On its Fifth Counterclaim for breach of fiduciary duty, monetary damages in an amount to be determined at trial;

(g) On its Sixth Counterclaim for breach of the obligation of good faith, monetary damages in an amount to be determined at trial;

(h) On its Seventh Counterclaim for breach of the obligation of good faith and fair dealing, monetary damages in an amount to be determined at trial;

(i) Costs and disbursements of the action;

(j) Applicable pre-judgment interest;

(k) Reasonable attorney's fees; and

(l) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 19, 2017

ROBINSON BROG LEINWAND
GREENE GENOVESE & GLUCK, P.C.

By: _____
John D. D'Ercole, Esq.
(jdd@robinsonbrog.com)
875 Third Ave, 9th Floor
New York, NY 10022-0123
(212) 603-6300
*Attorneys for Defendant*

TO: Andrew D. Hart, Esq
ahart@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
*Attorneys for Plaintiff*

{00890723.DOC;1 }