```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   WILMINGTON TRUST, N.A.,

 4                  Plaintiff,

 5            v.                            17 Civ. 7081 (LGS)

 6   1141 REALTY OWNERS, LLC,
                                            Conference
 7                  Defendant.

 8   ------------------------------x
                                            New York, N.Y.
 9                                          February 6, 2018
                                            10:50 a.m.
10
     Before:
11
                         HON. LORNA G. SCHOFIELD,
12
                                            District Judge
13

14                           APPEARANCES

15   SIDLEY AUSTIN LLP
          Attorneys for Plaintiff
16   BY:  ELIZABETH A. WALKER
          ANDREW D. HART
17
     ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK
18        Attorneys for Defendant
     BY:  JOHN D. D'ERCOLE
19        ROGER RAIMOND
          -and-
20   McLAUGHLIN & STERN
     BY:  RODNEY C. BIERMANN
21

22

23

24

25
```

1           (Case called)
2           MS. WALKER:  Elizabeth Walker, Sidley Austin, for
3   plaintiff.
4           MR. HART:  Andy Hart, Sidley Austin, for the
5   plaintiff.
6           MR. D'ERCOLE:  John D'Ercole with the firm of Robinson
7   Brog for the defendants, 1141 Realty Owner, LLC.
8           MR. RAIMOND:  Roger Raimond, Robinson Brog, for the
9   same defendant.
10          MR. BIERMANN:  Rodney Biermann for the defendant,
11  Robert K.Y. Chan.
12          THE COURT:  You may be seated.
13          I was hopeful that the matter was going to resolve
14  itself, and I recall that we put things on hold for a bit.
15          Tell me what happened.
16          MS. WALKER:  Your Honor, we had mediation on
17  December 22 with Mr. Chan and attempted to make headway with
18  the three-party dispute, essentially.  At the end of the day,
19  we decided that it would make sense to allow a 30-day period
20  for hopefully the borrower to seek some resolution of its
21  issues.  I'll let Mr. D'Ercole address those, but that did not
22  happen.
23          THE COURT:  That was when?
24          MS. WALKER:  December 22.
25          THE COURT:  So the 30 days has passed?

1          MS. WALKER: Correct.

2          THE COURT: Let me hear from Mr. D'Ercole.

3          MR. D'ERCOLE: Your Honor, may I say something? We

4 did make efforts to resolve the matter at a mediation.

5          THE COURT: The idea was to find alternate financing.

6          MR. D'ERCOLE: Yes. One of the things we were trying

7 to explore is to find alternative financing.

8          One of the things that support that point is to get a

9 payoff letter from the lender so that we know what they're

10 asking for in terms of the default interest, attorneys' fees,

11 and defeasance fee, but we haven't got it since then. I've

12 asked for it multiple times and I still don't have it. We

13 don't know exactly what we have to refinance, minus what we can

14 negotiate.

15          THE COURT: Do you have a ballpark idea?

16          MR. D'ERCOLE: We do have a ballpark idea.

17          THE COURT: You can probably make some progress with

18 the ballpark idea and nail down the last few dollars.

19          MR. D'ERCOLE: I think we need all the help in terms

20 of negotiations, but --

21          THE COURT: Ms. Walker, now that the 30 days has

22 expired and the defendant at least thinks there's still some

23 resolution, but they need some information from you, where are

24 you?

25          MS. WALKER: Your Honor, we have the information sans

1  attorneys' fees essentially.  They can get it; they know how to
2  calculate it.  We have given them ballparks.  And as you
3  said --
4          THE COURT:  They can get principal and interest.  What
5  about late fees and attorneys' fees?
6          MS. WALKER:  They're embedded in the documents.  They
7  know how to calculate them.  We've given them a round number.
8  I don't want to go into the mediation --
9          THE COURT:  That's fine.
10         MS. WALKER:  -- but they were given a number at the
11 mediation.  If they truly believe that they need this payoff to
12 even start to locate funding, we can do that.
13         THE COURT:  I'm going to ask that you do that.
14         Mr. D'Ercole, have you begun your discussions with
15 other lenders?
16         MR. D'ERCOLE:  We are talking to some other lenders;
17 but, as I indicated, we have a big problem with the defeasance
18 fee, which is four or five million dollars, and that's been
19 hampering us.  We were hoping to negotiate that a little bit
20 with the lender, and we haven't made progress.  That's the real
21 big issue here.  That's the elephant in the room, the fact of a
22 late defeasance fee.
23         THE COURT:  Did you make any progress on that issue or
24 discuss that issue with them?
25         MR. D'ERCOLE:  They've taken the position that it's

1    inflexible, they can't negotiate it, they're not allowed to

2    negotiate it, they can't take anything off it, which we don't

3    understand why that is the case, why they can't be negotiable

4    on that defeasance fee.

5            MS. WALKER:  Your Honor, just to be clear, the

6    defeasance fee fluctuates somewhat, and we are getting into

7    mediation issues.  But I will tell you that the defeasance fee

8    is approximately over 3 million, 3.3 million.  It is pursuant

9    to the documents that we have and the noteholder agreement in

10   place and the accruing --

11           THE COURT:  It's the idea that it's due if you pay off

12   the loan early, is that it?

13           MS. WALKER:  Correct.

14           MR. D'ERCOLE:  If I just may say something, your

15   Honor.

16           One of the issues we discussed is the amount of

17   defeasance fees at the mediation.  It was between 4 and 5.

18   This is the first time that I heard it's 3.3, and that's why it

19   was important for us to get a payoff letter, so we know what

20   the universe is.

21           THE COURT:  I'd like the plaintiff to provide a payoff

22   letter by the end of the week.

23           MS. WALKER:  That's possible.  Thank you.

24           THE COURT:  Then I would like, if you could, just

25   email me rather than filing it on ECF, because I know there are

1  confidential settlement negotiations.  But if the parties could
2  email me a joint letter at the chambers email address advising
3  me of the status, say three weeks from now, and then I'm going
4  to ask for status letters every 45 days after that.
5          I'm not going to adopt the scheduling proposals; it is
6  just slightly longer than what my default is.  It seems to me
7  this case is not really about discovery; it's really about
8  trying to resolve this issue.  So I will make the fact
9  discovery deadline June 6, expert discovery July 23.  As I
10 said, I want status letters every 45 days, beginning in three
11 weeks.
12         If you haven't resolved it, we'll have a conference
13 which will be, in effect, the final conference on August 7, at
14 10:30.  The purpose of the conference is twofold:  If any party
15 wants to bring dispositive motions, you need to file a timely
16 premotion letter at least two weeks before, and I'll hold a
17 premotion conference at that time.  If not, then just show up
18 at the conference and I'll set a firm trial date.
19         I know there are issues with the stipulation and
20 enforcement of the stipulation.  What I'm going to do is refer
21 the case for general pretrial supervision to deal with that and
22 any discovery issues.  Also, I know that there are proposed
23 cross-motions.  You should understand that I don't stay
24 discovery during the pendency of motions, so don't assume
25 anything is on hold.

1          I believe you gave me a proposed schedule for the
2   motions, which looked fine, and I wanted to give you the
3   schedules in your January 22 letter.  I wanted to give you a
4   40-page total page limit, and you may allocate them between the
5   briefs as you like, as long as you don't exceed 40 pages.
6          MS. WALKER:  Your Honor?
7          THE COURT:  Yes.
8          MS. WALKER:  We had an adjustment.  The letter that
9   you received had a February 2 date, and we reached agreement
10  prior to this hearing on the new dates for the motions.
11         Would you like me to hand that up to you?
12         THE COURT:  Yes, and why don't put it on the record
13  also.
14         MS. WALKER:  I will.
15         THE COURT:  I'll put it on the record because I can
16  see them.
17         February 23 for the plaintiff's motion to dismiss.
18  The counterclaims, March 9 for the opposition and cross-motion.
19  March 23 for the plaintiff's opposition to defendants' motions
20  and its reply; and April 6 for the defendant's reply.
21         You can do the pages however you want, but it often
22  works if the party that goes first divides their pages equally
23  between the two; and the party that goes second does, for
24  example, 75 percent in the first brief and 25 percent in the
25  last brief.  So that would mean that the plaintiffs would do 20

1  pages and 20 pages, and the defendants would do 30 and 10.
2  But, as I said, I leave it to you.  Just don't exceed the 40
3  pages.
4         Apart from that, and the number of briefs, my
5  individual rules lay out various details about motions,
6  including a rule for a courtesy copy, hard copy to me in a
7  binder when it's fully briefed, submitted by the last party to
8  file, so that would be from the defendants.  So I'd like a
9  binder from defendants with all the files in order, in hard
10 copy.
11        I think that is everything that we need to discuss at
12 this conference.  Is there anything else?
13        MR. D'ERCOLE:  We did raise a jurisdiction point, your
14 Honor, and I don't know if you want to hear anything on that.
15        THE COURT:  That's part of your motion, isn't it?
16        MR. D'ERCOLE:  That would be correct.
17        THE COURT:  I think you can just put it in your
18 motion.  I did read your letters, both your letters, but I
19 think it's best to put it in your motion.
20        MR. D'ERCOLE:  Thank you, your Honor.
21        MS. WALKER:  Your Honor, just one question.
22        On the stipulation, we have an issue because we don't
23 know what to fund because we don't have the information.
24        We've been told for over a month that the defendant is
25 changing accountants; but when you go back and look at the

1    information we do have, the accountants that they're talking

2    about they paid in 2016. We've been told and the documents

3    show that checks have been cut to a group called Real

4    Hospitality for their accounting services for October and

5    November.

6         They have had accountants in continuity, but we just

7    haven't gotten the information. As my letter pointed out,

8    there are a lot of violations of the stipulation, but the

9    bottom line is we don't know what to fund.

10        MR. D'ERCOLE: Judge, I don't think there's been a lot

11   of violations of the stipulation. What we have in our

12   possession are checks, payroll, ACH debits, and invoices.

13   That's the universe of documents that we have. We were given

14   everything except the invoices.

15        We had this issue because we did change the management

16   company and they've taken over the accounting. I hope within

17   the next three, four, five days to have all of the invoices

18   provided to the plaintiff. We've been operating in tremendous

19   good faith here. They almost seem to have an audit, and the

20   purpose of the stipulation was not so they could audit --

21        THE COURT: The business.

22        MR. D'ERCOLE: -- the defendant in this action.

23   They're seeking accountants and everything else. We're giving

24   them the universe of documents that we have; and everything we

25   did wrong, it's a letter, it's a meet-and-confer, almost like

1   an audit, like a receiver.
2           THE COURT:  It sounds to me like there is potentially
3   a lot to argue about here, which is why I defer this issue to
4   the magistrate judge, as well as any discovery disputes you may
5   have.
6           What I suggest is if you haven't been able to resolve
7   it within the next three or four days, if the magistrate judge
8   hasn't reached out to you, it's Judge Pitman, then I suggest
9   that you try and get on his calendar.
10          MR. D'ERCOLE:  Very good.  Thank you, your Honor.
11          MS. WALKER:  Your Honor, could you also enter an order
12  requiring them to provide whatever they're going to provide by
13  Friday?  We've been waiting for this for weeks.
14          THE COURT:  I'm loathed to enter an order saying,
15  Provide whatever you're going to provide by Friday, because I
16  don't know what that means.  I don't know what it is.  I don't
17  know if they have it.
18          MS. WALKER:  I understand.  It's just we're operating
19  in a black box.
20          THE COURT:  I will just ask the defendants to please
21  try to act expeditiously, and you're going to have a problem
22  getting funding if you don't.
23          MR. D'ERCOLE:  We understand that, your Honor.
24          THE COURT:  It's your duty as much as anyone else.
25          MR. D'ERCOLE:  We understand that.

1           THE COURT:  This case is adjourned.
2           MS. WALKER:  Thank you, your Honor.
3           (Adjourned)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25