UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
WILMINGTON TRUST, N.A.,                                      :
                                        Plaintiff,          :
                                                            :                    17 Civ. 7081 (LGS)
                        -against-                           :
                                                            :                    **OPINION AND ORDER**
1141 REALTY OWNER, LLC,                                      :
                                        Defendant.          :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/16/2018

LORNA G. SCHOFIELD, District Judge:

Plaintiff Wilmington Trust, N.A. ("Wilmington Trust"), as Trustee for a commercial mortgage trust, brings this action "by and through" its Special Servicer Midland Loan Services, a Division of PNC Bank, N.A." ("Midland") to foreclose a commercial mortgage loan on the Flatiron Hotel on 26th Street in Manhattan. Defendants 1141 Realty Owner LLC ("1141 Realty") and Jagdish Vaswani move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defendant's motion is denied.

## I.   BACKGROUND

The following alleged facts are drawn from the Amended Complaint (the "Complaint") and documents submitted on this motion. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

On April 16, 2015, 1141 Realty obtained a $25 million loan from Rialto Mortgage Finance, LLC (the "Original Lender") under the Loan Agreement, evidenced by Notes A and B in the amounts of $22,500,000 and $2,500,000, respectively. On the same day, 1141 Realty and the Original Lender entered into multiple other agreements to secure the loan, including the

Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement, granting a first mortgage lien on the Flatiron Hotel; the Assignment of Leases and Rents; the Guaranty of Recourse Obligations; and the Cash Management Agreement (together, with the Loan Agreement and Notes A and B, the "Loan Documents"). On May 21, 2015, the Original Lender assigned "all right, title and interest" in the Loan Documents to Plaintiff as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2015-C28, Commercial Mortgage Pass-Through Certificates, Series 2015-C28 (the "Trust"). The Loan Documents state that they are to be governed by New York law.

Wilmington Trust is the owner and holder of Note A, and RMezz Flatiron LLC ("RMezz") is the owner and holder of Note B. By virtue of an assignment in the Agreement Between Noteholders ("the Noteholder Agreement"), Wilmington Trust has "sole and exclusive authority with respect to the administration of, and exercise of rights and remedies with respect to" the Loan Agreement, the Mortgage and the Notes. Subject to certain exceptions, RMezz does not have the right to vote or consent to the administration, or to pursue legal action, with respect to the Loan Agreement, the Mortgage and the Notes.

This foreclosure action arose out of 1141 Realty's alleged non-monetary default under the terms of the Loan Documents. On September 15, 2017, Wilmington Trust sent 1141 Realty a Notice of Default and Acceleration (the "Acceleration Notice"), stating that the Borrower is in default based on its failure to maintain a valid and effective liquor license, accelerating the Maturity Date[1] of the Loan and demanding immediate payment of the loan balance ($24,209,357.00) plus all other sums owed. On September 18, 2017, Wilmington Trust commenced this action in its own name as Trustee, and by and through its Special Servicer. The

---

[1] All capitalized terms in this Opinion that are not defined have the meanings ascribed to them in the Loan Documents.

Complaint alleges that subject matter jurisdiction exists under 28 U.S.C. § 1332(a) as a dispute between citizens of different states. The parties agree that Wilmington Trust is a citizen of Delaware, while none of the defendants are, and the amount in controversy exceeds $75,000.

## II.    STANDARD

When deciding a motion to dismiss under Rule 12(b)(1), a court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *Loubier*, 858 F.3d at 725. Courts "may also consider all extrinsic evidence proffered by the parties . . . in support of their jurisdictional positions." *Id.* Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. *Id.*

## III.    DISCUSSION

Defendants' motion to dismiss for lack of subject matter jurisdiction is denied. Wilmington Trust is a real and substantial party to the controversy, and therefore its citizenship alone may be considered on the plaintiff's side to determine whether diversity jurisdiction exists. Because the Complaint adequately alleges diversity of citizenship between Wilmington Trust and all Defendants and the amount in controversy requirement is met, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the dispute is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity must be "complete," meaning that "'there is no plaintiff and no defendant who are citizens of the same State.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). "[C]itizens for purposes of a federal court's diversity jurisdiction 'must be real and substantial parties to the controversy.'" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (internal quotation marks

omitted) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980)).  "To establish whether a

plaintiff is a 'real and substantial party to the controversy,' a crucial distinction must be made

between a plaintiff who sues solely in his capacity as an agent, on the one hand, and, on the

other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake

in the litigation."  *Id*. at 194.

"[W]here multiple parties all have a financial interest in lawsuit, a strategic choice of

parties in order to maintain diversity is *not* considered to be collusive so long as the party chosen

to bring the suit is in fact the *master of the litigation*."  *Id.* at 195 (alteration and emphasis in

original) (quoting *Transcon. Oil Corp. v. Trenton Prods. Co.*, 560 F.2d 94, 103 (2d Cir. 1977)).

Moreover, "when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State

to which she belongs . . . ."  *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016

(2016) (emphasis in original) (citing *Navarro Sav. Ass'n*, 446 U.S. at 465).

The Complaint alleges, and Defendants do not dispute, that the amount in controversy

exceeds $75,000.  Defendants also do not dispute that there is complete diversity between

Wilmington Trust, the named Plaintiff, and all Defendants.  The issue is whether Wilmington

Trust's citizenship alone determines diversity where, as here, Wilmington Trust is the owner and

holder of Note A and non-party RMezz is the owner and holder of Note B.

Here, Plaintiff has met its burden to prove that only Wilmington Trust's citizenship need

be considered on the plaintiff's side for purposes of assessing diversity.  Defendants concede

that, at least in relation to Note A, "the Trust has sufficient title to and power over the Trust

assets to act on behalf of its certificate holders who are the beneficiaries of the Trust, such that

only the citizenship of the Trustee need be considered for diversity purposes."  Whether or not

Wilmington Trust has any interest of its own in Note B, Wilmington Trust is a "real and

substantial party to the controversy" that sues "not only as an agent [in relation to Note B], but also as an individual [that] has [its] own stake in the litigation." *See Oscar Gruss*, 337 F.3d at 194. Nor is the Court required to consider RMezz's citizenship for purposes of assessing diversity simply because RMezz has a financial stake in the litigation. As the Second Circuit observed, "we regularly exercise diversity jurisdiction in cases where nondiverse individuals or groups who are not direct parties to the litigation nevertheless have a crucial interest in its outcome." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998); *accord Cott Corp. v. Star*, No. 12 Civ. 1004S, 2013 WL 5701856, at *4 (W.D.N.Y. Oct. 18, 2013); *see, e.g.*, *Oscar Gruss*, 337 F.3d at 194 (holding that the citizenship of non-diverse, non-parties to whom 88.47% of stock warrants in defendants' company were issued was irrelevant where plaintiff retained an 11.53% interest in the warrants and therefore was not "a mere conduit"); *BC Media Funding Co. II v. Lazauskas*, No. 08 Civ. 6228, 2009 WL 290526, at *3 (S.D.N.Y. Feb. 6, 2009) ("That [non-party] Media Funding, as the lender, also has a substantial interest in this case, and lays claim to a greater proportion of the Judgment, does not affect BCMF's ability to have sufficient standing for diversity jurisdiction purposes.").

Defendants' argument that RMezz is the master of the litigation is unpersuasive. Specifically, Defendants argue that RMezz is the master of the litigation because the Noteholder Agreement requires Wilmington Trust to request, under certain circumstances, RMezz's written consent to initiate a lawsuit. Section 5(f) requires Wilmington Trust to "request the written consent of the Controlling Noteholder . . . before implementing a decision with respect to a Major Decision," and provides the Controlling Noteholder the right of consent, unless it fails to respond as specified. The meaning of "Major Decision" depends on whether RMezz or Wilmington Trust is the Controlling Noteholder. When RMezz is the Controlling Noteholder --

as the parties seem to agree was the case at all times relevant here -- a Major Decision includes "following a default or an event of default with respect to the Mortgage Loan, any acceleration of the Mortgage Loan or *initiation* of judicial, bankruptcy or similar proceedings under the related Loan Documents or with respect to the related mortgagor or Mortgaged Property." (Emphasis added.)

The Noteholder Agreement makes clear that RMezz has no right to control the litigation once it is commenced. Section 5(a) provides:

> Subject to this Agreement (including, without limitation, Section 5(f) below) . . . *[Wilmington Trust] shall have the sole and exclusive authority* with respect to the administration of, and exercise of rights and remedies with respect to, the Mortgage Loan, *including . . . the sole authority to . . . institute any foreclosure action* or other remedy and *[RMezz] shall not have any voting, consent or other rights* whatsoever with respect to *[Wilmington Trusts's]* administration of, or *exercise of its rights and remedies* with respect to, the Mortgage Loan . . . . *[RMezz] agrees that it shall have no right* . . . to, (i) call or cause [Wilmington Trust] to call an Event of Default under the Mortgage Loan, or (ii) *exercise any remedies* with respect to the Mortgage Loan or the Mortgage Loan Borrower . . . . (Emphasis added.)

In other words, Wilmington Trust -- not RMezz -- at all times has the sole and exclusive right to control the litigation, notwithstanding that RMezz is, in certain circumstances, the "Controlling Noteholder" with the right to consent to the initiation of a foreclosure action. That the Noteholder Agreement accords RMezz a role in the decision to *commence* litigation does not mean that RMezz controls the *conduct* of the litigation.

## IV.    CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. Plaintiff's motion for oral argument is DENIED as moot. The Clerk of Court is directed to close the motion at Docket No. 114.

Dated: March 16, 2018
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE